E-FILED
Wednesday, 15 April, 2020  10:57:56 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BETTY M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1023-JES-JEH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Plaintiff's Motion (Doc. 11) for Summary

Judgment and Memorandum (Doc. 12) in Support; Defendant's Motion (Doc. 13) for Summary

Judgment and Memorandum (Doc. 14) in Support; Plaintiff's Response (Doc. 15) thereto; the

Magistrate Judge's Report and Recommendations (Doc. 16); and Plaintiff's Objection (Doc. 17)

thereto. For the reasons set forth below, the Court ADOPTS the Magistrate Judge's Report and

Recommendations (Doc. 16); Plaintiff's Motion (Doc. 11) is DENIED, and Defendant's Motion

(Doc. 13) is GRANTED.

### BACKGROUND

The facts of this case have been sufficiently detailed in the Magistrate Judge's Report and

Recommendation (Doc. 16), which the Court now adopts. The Court thus recounts the facts here

in summary fashion.[1] Additional facts will be incorporated as necessary in the discussion section,

*infra*.

---

[1] Consistent with the Magistrate Judge's Report and Recommendation (Doc. 16), references to the pages with the Administrative Record (Docs. 7, 8) will be identified by "AR [page number].

1

Betty filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on March 18, 2013, alleging disability beginning on February 1, 2013. Her claims were denied initially on June 7, 2013 and upon reconsideration on October 17, 2013. Betty filed a request for hearing concerning her applications for DIB and SSI which was held before the Honorable John Wood (ALJ) on January 8, 2015. At that hearing, Betty was represented by an attorney, and Betty and a vocational expert (VE) testified. After the hearing, Betty's claims were denied on June 15, 2015. Upon its requested review, the Appeals Council (AC) remanded the case in October 2016. A supplemental hearing was held on April 20, 2017 before the same ALJ at which time Betty was again represented by counsel and she and a VE testified. The ALJ again denied Betty's claims on February 15, 2018. Betty's request for review by the AC was denied on November 29, 2018, making the ALJ's February 2018 Decision the final decision of the Commissioner.

Betty filed the instant civil action seeking review of the ALJ's Decision on January 18, 2019. On February 4, 2020, the Magistrate Judge entered a Report and Recommendation proposing: 1) the Plaintiff's Motion for Summary Judgment (Doc. 11) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 13) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew M. Saul, Commissioner of Social Security, denying benefits to the Plaintiff, Betty M., is AFFIRMED."; and 4) this matter be terminated. Doc. 16, at 22. Plaintiff timely filed an Objection to the Magistrate Judge's findings. Doc. 17. This Order follows.

### LEGAL STANDARD

When reviewing a decision to deny benefits, the Court "will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial

evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. § 405(g). Substantial

evidence means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (internal quotations

omitted). "When reviewing for substantial evidence, [the Court] do[es] not displace the ALJ's

judgment by reconsidering facts or evidence or making credibility determinations." *Id.* If

reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the

ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

DISCUSSION

Plaintiff raises three principal arguments in her Objection: (1) the ALJ erred in weighing

the treating physician opinion evidence; (2) The ALJ's symptom evaluation cannot be upheld

given (A) the Commissioner did not assert the ALJ used the correct legal standard, (B) and

specific errors establish the analysis was unsupported or contrary to law; and (3) the ALJ's

functional capacity finding lacks substantial support. *See generally* Doc. 17. The Court will

address each argument in turn.

**(1) The ALJ did not Err in Weighing the Treating Physician Evidence**

In her Motion for Summary Judgment, Betty argued the ALJ improperly weighed treating

physician Dr. Djagarian's opinion because he focused upon one examination rather than the

entirety of supporting evidence, did not proffer a supportable rationale in several respects, and

failed to properly set forth the weighing of his opinion under the regulatory factors. *See* Doc. 16,

at 16.

20 C.F.R. § 404.1527(c) provides:

> How we weigh medical opinions. Regardless of its source, we will evaluate every
> medical opinion we receive. Unless we give a treating source's opinion controlling
> weight under paragraph (c)(2) of this section, we consider all of the following
> factors in deciding the weight we give to any medical opinion….

3

1) examining relationship;
2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship;
3) supportability;
4) consistency;
5) specialization; and
6) other factors brought to the Social Security Administration's attention.

*Id.* An ALJ must give controlling weight to the medical opinion of a treating physician only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2). Further, an ALJ must provide some explanation for his decision to discount a treating physician's opinion, and as long as the ALJ has "minimally articulated [his] reasons for rejecting the treating doctor's opinion," the decision must stand. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Here, the ALJ considered Dr. Djagarian's May 2016 opinion and determined it was "not supported by medically acceptable clinical and laboratory diagnostic techniques" where examination at the time the doctor proffered his opinion showed, among other things, normal gait, no joint swelling, no joint tenderness, no scoliosis, normal motion of all joints, no joint instability, normal muscle strength and tone, mild tenderness on the side of the right shoulder, slightly reduced range of motion of the right shoulder joint, no sensory deficits, normal reflexes, no diabetic neuropathy noted, and good bilateral grip strength. AR 22. The ALJ determined that part of Dr. Djagarian's opinion that Betty could lift no more than 10 pounds or perform extended walking or standing as well as sitting was inconsistent with his own treatment notes and Betty's description of her activities and limitations. *See* Doc. 16, at 17.

In his Report and Recommendation, the Magistrate Judge found the ALJ minimally articulated his reasons for discounting Dr. Djagarian's opinion and considered the consistency

and supportability of the opinion with the record evidence. In so finding, the Magistrate Judge acknowledged "the ALJ considered the supportability and consistency of Dr. Djagarian's May 2016 opinion with his treatment record from that particular date" and "other records from Dr. Djagarian indicated that Betty upon examination at other times had reduced touch sensitivity of the fingers and of the toes and had reduced range of motion in both shoulders and reduced hip motion." *Id*. at 17. Because "Dr. Djagarian's treatment notes included a mixed bag of examination results," the Magistrate Judge found that reversal "for the reason that the ALJ did not consider Dr. Djagarian's opinion in comparison to the entirety of the record evidence would be an overly technical application of 20 C.F.R. § 404.1527 in this case." *Id*. at 18. Noting the need to review the ALJ's decision as a whole and with common sense, the Magistrate found the ALJ also considered the opinions provided by ME Dr. Puestow, a medical expert, designated by the Commissioner of the Social Security Administration to resolve conflicts in the medical evidence and provide objective opinions about a claimant's ability to perform work activities. Dr. Puestow's assessments and opinions cited test and examination results in support and were consistent with other medical evidence of record and with Betty's description of her limitations and activities. Thus, the Magistrate Judge concluded "[t]he ALJ did not reversibly err in his consideration of Dr. Djagarian's opinion where he availed himself of a ME to resolve conflicting medical records and clearly articulated his reasons for assigning more weight to the ME's opinion." *Id*. at 18–19.

In her Objection to the Magistrate Judge's findings, Plaintiff states "an ALJ cannot reject the opinion of a treating physician by selectively focusing on one examination; the ALJ must assess the entirety of the supporting evidence." Doc. 17, at 4 (citing *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014)). Plaintiff argues the Magistrate Judge failed to explain why he

deemed the ALJ's failure to mention Dr. Djagarian's treatment notes a technical error that could be cursorily dismissed. *Id*. However, as the Magistrate Judge explained, the ALJ did not selectively focus on just Dr. Djagarian's examination, but rather he "availed himself of a ME to resolve conflicting medical records and clearly articulated his reasons for assigning more weight to the ME's opinion." Doc. 16, at 18–19. The ALJ thus sufficiently articulated his reasons for discounting Dr. Djagarian's opinons. *Elder*, 529 F.3d at 415.

Plaintiff also argues the ALJ failed to explain how Dr. Djagarian's treatment notes were inconsistent with his opinion Plaintiff could life no more than 10 pounds or perform extended walking or standing. Doc. 17, at 4. The Magistrate Judge rejected this argument as "nitpicking," noting the ALJ provided numerous examples to illustrate how Dr. Djagarian's opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques on the very day he opined to Plaintiff's limitations. Thus, the Magistrate Judge found the ALJ's consideration of Plaintiff's ADLs was not patently wrong. *See* Doc. 16, at 12 ("The Court can trace the path of the ALJ's reasoning from the evidence of Betty's ADLs to his conclusion that the extent of such activity did not support the level of intensity, persistence, and limiting effects of impairments Betty alleged…. The Court can, in turn, trace the path of the ALJ's reasoning between his consideration of Betty's ADLs and his conclusion that Betty's ability to perform 'her usual daily activities' was inconsistent with her allegation of total and complete disability."). The Court agrees with the Magistrate Judge's analysis and conclusion that the ALJ's consideration of Plaintiff's ADLs was not patently wrong.

Plaintiff further argues that even if the ALJ had provided a proper rationale for not affording the opinion controlling weight, he still failed to assess the weight given to the opinion in accordance with the regulatory checklist of factors. Doc. 17, at 7. But as the Magistrate Judge

found, the ALJ's reasoning "revealed that he considered the consistency and supportability of Dr. Djagarian's opinion with the record evidence." Doc. 16, at 17. This was sufficient. *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, and its inconsistency with the rest of the record. This is enough.") (cleaned up); *Elder,* 529 F.3d at 415–16 (affirming denial of benefits where ALJ discussed only two of the relevant factors).

**(2) The ALJ's Symptom Evaluation was Sufficient**

Next, Plaintiff argues: (A) the Commissioner did not assert the ALJ used the correct legal standard, (B) and specific errors establish the analysis was unsupported or contrary to law; and (3) the ALJ's symptom assessment cannot be upheld solely based on the medical evidence. Doc. 17, at 7–12.

Plaintiff first argues the ALJ erred when he found Plaintiff's subjective symptoms "are not entirely consistent with evidence of record" because the applicable regulation requires ALJs to weigh the evidence based on a preponderance of the evidence. Doc. 17, at 7–8 (citing 20 C.F.R. § 404.953(a)). Plaintiff asserts the Magistrate Judge did not address why remand was not warranted given the Commissioner's failure to maintain the ALJ used the correct legal standard. *Id*. at 8. In his Report and Recommendation, the Magistrate Judge found:

> While Betty initially argues with regard to the ALJ's subjective symptom evaluation that the ALJ applied the wrong standard – whether her symptoms were "entirely consistent" with the record evidence – the Court sees no such flaw in the Decision beyond a poor choice of words amounting to "meaningless boilerplate." *Ronald B. v. Saul*, 18 C 5881, 2019 WL 3778070, at *5 (N.D. Ill. Aug. 12, 2019) ("Although the 'not entirely consistent' phrasing is meaningless boilerplate language that does not aid our review of the ALJ's subjective symptom evaluation. . . it does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies [his] subjective symptom assessment") (internal citations omitted).

Doc. 16, at 11. "[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). Here, as Defendant correctly noted in its summary judgment Memorandum, the ALJ did not apply a standard that Plaintiff's statements must be "entirely consistent" to be credited, but rather assessed the extent to which Plaintiff's subjective allegations were consistent with and supported by other record evidence, including the objective evidence. Doc. 14, at 11–12 (citing 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence.")). The Court agrees with the Magistrate Judge that the ALJ's isolated reference to "not entirely consistent" does not indicate the ALJ applied the wrong legal standard.

Next, Plaintiff argues the ALJ erred in considering Plaintiff's activities of daily living because he did not explain why he perceived Plaintiff's activities of doing household tasks, driving, shopping, paying bills, going to church and interacting with others were inconsistent with her allegations and supported the ability to perform light work on a full time continuous basis. Doc. 17, at 9–10. In his Report and Recommendation, the Magistrate Judge stated:

> The ALJ considered the fact that she lived independently and was able to perform activities required to live by herself including preparing meals, attending to household tasks, driving, shopping, attending to financial affairs, and visiting with others. He reasoned that Betty was able to walk, stand, and sit while engaging in those activities while living independently in an apartment. The Court can trace the path of the ALJ's reasoning from the evidence of Betty's ADLs to his conclusion that the extent of such activity did not support the level of intensity, persistence, and limiting effects of impairments Betty alleged. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The Court can, in turn, trace the path of the ALJ's reasoning between his consideration of Betty's ADLs and his conclusion that Betty's ability to perform "her usual daily

activities" was inconsistent with her allegation of total and complete disability. AR 21.

As for Betty's difficulty in performing some ADLs, it is true that an ALJ "cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Here, Betty testified that hand problems came and went and depended upon what she was doing. She testified that she needed help from her daughters because of her hands "[n]ot often." AR 85. When her hands stopped her from doing something, Betty would "wait a couple of seconds and just kind of massage [her] hands." AR 87. She said someone came over to help her with basic things like getting dressed "once a month." AR 88. Her daughters helped her with laundry and grocery shopping. At the supplemental hearing, Betty testified that her daughters came over when she needed assistance which she estimated to be two to three times a week. Betty testified they helped with her household chores "if I need help" and she did her own laundry "as much as I can. I just don't fold everything like I used to." AR 42. In his Decision, the ALJ included Betty's testimony that she needed help from her daughter about once per month, that she admitted doing her own cleaning and cooking, and that she shopped with her daughters. AR 18. Though it was error for the ALJ to omit the fuller extent of Betty's testimony as to the performance of ADLs, the error was harmless as the ALJ did not place undue weight on Betty's household activities. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home"). Beyond his reliance upon Betty's ADLs to support his subjective symptom evaluation, the ALJ additionally cited to medical evidence that Betty did not have significantly limited range of motion, her peripheral neuropathy was treated with exercise, wrist splints, and medication, she did not have disabling side effects due to medication, and objective examination, reviewing physicians, and the designated ME assessed Betty as "generally capable of performing light or medium duty work." AR 21.

Doc. 16, at 12–14.

As stated above, although the Magistrate Judge found it was error for the ALJ omit the fuller extent of Plaintiff's testimony as to ADLs, the Magistrate Judge found the error harmless because the ALJ did not place undue weight on Plaintiff's household activities, but rather considered "medical evidence that Betty did not have significantly limited range of motion, her peripheral neuropathy was treated with exercise, wrist splints, and medication, she did not have disabling side effects due to medication, and objective examination, reviewing physicians, and

the designated ME assessed Betty as "generally capable of performing light or medium duty work." Doc. 16, at 14. Because Plaintiff argues the ALJ's reliance on these additional reasons (Plaintiff's treatment and the ALJ's assessment of the medical evidence) was also error, the Court proceeds to evaluate those arguments. Doc. 17, at 11.

Plaintiff next argues the ALJ erred in invalidating Plaintiff's symptoms based on her treatment course. Plaintiff had surgery, injections, physical therapy, and "an extended medical regimen." Doc. 17, at 10. According to Plaintiff, the Magistrate Judge "determined that the ALJ properly penalized [Plaintiff] for her 'conservative type care' " and concluded Plaintiff failed to demonstrate why treating physicians did not suggest more invasive treatment and failed to establish Plaintiff had consistent financial difficulties. *Id.* Plaintiff argues the Magistrate Judge's analysis was erroneous because "the Seventh Circuit squarely places the burden on the ALJ, not the claimant, to support treatment inferences by grounding them in the record. *Id.* at 12 (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)).

In addressing Plaintiff's arguments, the Magistrate Judge reasoned:

Betty also argues the ALJ provided no record basis that some other more aggressive treatment was appropriate, and she and the Commissioner argue whether diabetic neuropathy can even be treated surgically or invasively. Regardless of whether diabetic neuropathy can be so treated, the ALJ correctly observed the extent of Betty's treatment; her treatment included physical therapy, oral medication, insulin injections, exercise, and wrist splints. The ALJ made the observation that Betty did not require "more than conservative type care," and Betty does not point to anywhere in the record where doctors suggested more invasive treatment. AR 21. In response to that reality, Betty argues the ALJ legally erred where he made an adverse treatment inference without proper consideration of the reasons for perceived conservative treatment. Betty cites to select records dated in 2013 and one from early 2014 pertaining to her financial limitations with regard to medication and with regard to the shoulder surgery she eventually obtained as a "charity case." AR 1035. Betty does not cite to anywhere later in the record when she continued to mention her financial difficulty. She also does not cite to where doctors suggested additional treatment as time went on that Betty indicated she was unable to pursue. That notations such as those Betty cites appear in the record does not undermine that part of the ALJ's Decision that gave consideration to Betty's

"conservative type care." AR 21. After all, the onus is not on the ALJ to question why treating doctors did not suggest more invasive treatment.

Doc. 16, at 14.

The Court agrees with the Magistrate Judge's analysis. The ALJ did not penalize Plaintiff for her history of conservative treatment. Rather, the ALJ accurately summarized the extent of Plaintiff's past medical treatment as part of his analysis. Objective evidence and a claimant's treatment regimen are factors properly considered by ALJs when evaluating subjective symptoms. 20 C.F.R. § 404.1529(b)(2), (c)(4), (c)(5); Doc. 14, at 11. And while "[a]n 'inability to afford treatment' can provide insight to a claimant's lack of medical care," *Craft,* 539 F.3d at 679, Plaintiff does not cite to anywhere in the record after 2014 when she continued to mention her financial difficulty and does not cite to where doctors suggested additional treatment as time went on that Betty indicated she was unable to pursue.

Next, Plaintiff argues the ALJ's symptom assessment cannot be upheld solely based on the medical evidence. Plaintiff states an ALJ cannot consider the objective evidence and reject symptoms simply as not grounded in the medical record. Doc. 17, at 13 (citing *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015)). In shotgun fashion, Plaintiff proceeds to argue: (1) The ALJ's reliance on objective findings is unsupported given that the ALJ found Plaintiff had fibromyalgia, which is not assessed by usual objective findings; (2) the ALJ provided no evidence that specific findings he relied upon, such as absence of atrophy, needed to be present for Plaintiff to have pain; and (3) the ALJ did not explain why he made an adverse inference from Plaintiff's lack of disabling side effects given that she did not allege disabling side effects. Doc. 17, at 14.

In addressing Plaintiff's arguments, the Magistrate Judge reasoned:

Betty's remaining arguments as to the ALJ's subjective symptom evaluation – that the ALJ legally erred by noting she lacked more marked objective clinical findings; that the ALJ cited no evidence that specific findings such as muscle atrophy, needed to be present for Betty to have pain; that the ALJ found Betty had fibromyalgia as a severe impairment which is not assessed by usual objective findings; and that he did not explain what disabling side effects Betty alleged - can be resolved in the same summary fashion that she presents them. Objective evidence is to be considered in a subjective symptom evaluation, and so it was proper for the ALJ to rely, in part, on that evidence in rejecting Betty's allegations as to the extent of her symptoms. The ALJ explained that the medical evidence did not demonstrate Betty had, among other things, muscle atrophy which was "associated with intense and disabling pain." AR 21. Dr. Djagarian's notes repeatedly included that Betty had normal muscle strength and tone. The ALJ cannot be faulted for highlighting an absence of muscle atrophy in the medical evidence. Betty's fibromyalgia argument is underdeveloped and thus requires no analysis. Finally, Betty cites to just one page of the record wherein Dr. Djagarian noted her gabapentin had a lot of sedation in support of her contention that the ALJ did not explain what disabling effects she alleged. An ALJ need not discuss every piece of record evidence. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion"). Also, Betty appears to believe that the sedation side effect of a claimant's prescribed medication automatically amounts to a "disabling" side effect. She cites no authority for that belief. The ALJ determined Betty did not have disabling side effects due to medication. Beyond the record cited by Betty, at other times she complained of no medication side effects. *See, e.g.,* AR 1222, 1258 (compliant with current treatment regimen), 1594, 1640 (pain symptoms subsided with medication), 1663, 1682. The Court finds that the ALJ's subjective symptom evaluation was not patently wrong.

Doc. 16, at 15–16.

As to Plaintiff's fibromyalgia argument, the Court agrees with the Magistrate Judge that Plaintiff failed to develop this argument. In her brief, Plaintiff stated: "Additionally, the ALJ found that Ms. Middleton had fibromyalgia as a severe impairment which is not assessed by usual objective findings. (AR 17.) *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017)." Doc. 12, at 15. That single-sentence observation, untied to any analysis, is insufficient. Moreover, the fact the ALJ found Plaintiff to have fibromyalgia despite the lack of objective findings undermines Plaintiff's argument that the ALJ only considered objective medical evidence. The Court further agrees with the Magistrate Judge that it was not error for the ALJ to

consider an absence of muscle atrophy in the medical evidence in rejecting Betty's allegations as to the extent of her symptoms. Third, Plaintiff's argument as to the ALJ's finding that Plaintiff lacked disabling side effects cannot be faulted given that Plaintiff herself "did not allege disabling side effects," Doc. 17, at 14, and at times she complained of no medication side effects. The Court therefore concurs with the Magistrate Judge that the ALJ's symptom evaluation was not patently wrong.

### (3) The ALJ's Functional Capacity Finding had Substantial Support

Finally, Plaintiff argues the ALJ's functional capacity findings lack substantial support. Doc. 17, at 14–16. Therein, Plaintiff notes the ALJ gave "some probative value" to the opinion of Physician Assistant Fogle, who opined Plaintiff was limited to only *occasional* use of her hands for handling, fingering, and gripping and that she was unable to reach above shoulder level with her right arm. Despite finding PA Fogle's opinion had some probative value, Plaintiff argues, the ALJ failed to include those limitations in Plaintiff's functional capacity finding or explain the omission. *Id*. at 14. Rather, the ALJ found Plaintiff could *frequently* perform those activities. Plaintiff argues it was error for the ALJ to not explain why he found Plaintiff could frequently perform those activities. *Id*. at 15. Additionally, Plaintiff argues the ALJ's functional capacity finding was insufficient because the ALJ failed to properly assess Plaintiff's obesity and the combined impact of her impairments.

Addressing Plaintiff's arguments, the Magistrate Judge reasoned:

Once again, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson*, 402 U.S. 389 at 390. The ALJ assessed treating PA-C Fogle's February 2015 opinion as entitled to "some probative value" where it was "supported by objective medical evidence of record and is consistent with the opinions of the designated medical expert." Elsewhere in the Decision, the ALJ noted that peripheral neuropathy produced "some sensation disruption," medical evidence did not demonstrate "significantly limited range of motion," Betty was able to perform the activities required to live by herself, she

had good bilateral grip strength, her peripheral neuropathy of both upper extremities had not resulted in persistent and significant disorganization of motor function, and examination in May 2016 showed no sensory deficits and no diabetic neuropathy was noted. ME Dr. Puestow's opinion provided Betty was "limited in her ability to fully use her right upper extremity as well as her left upper extremity, to some degree." AR 23. Clearly, the ALJ credited Fogle's opinion with "some probative value" because the fact of Betty's limitation in the use of her upper extremities found support in the record. Whereas the ALJ afforded "some probative value" to Fogle's opinion in light of such record evidence, she afforded "*significant* probative value" to Dr. Puestow's opinion which provided that Betty could use her right and left hands continuously for handling, fingering, and feeling. The *greater* probative value given to Dr. Puestow's opinion is reflected in the ALJ's RFC finding limiting Betty to greater use (frequent) of her dominant upper extremity than the use to which Fogle opined.

As for Betty's obesity, the ALJ expressly pointed out Betty's BMI was "recently" measured by her physician to be 36.64 and that she was obese. ME Dr. Puestow's opinion identified obesity as one of Betty's impairments and noted her BMI to be "35-37." AR 1716. The Seventh Circuit explained in *Prochaska v. Barnhart* that any error on the ALJ's part in that case to explicitly address the claimant's obesity was harmless where he "specifically predicated his decision upon the opinions of physicians who did discuss her weight" and where the claimant "failed to specify how [her] obesity further impaired [her] ability to work." 454 F.3d 731, 737 (7th Cir. 2006) (citing *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004)). In this case, the ALJ obviously predicated his RFC finding on ME Dr. Puestow's opinion where he gave that opinion "significant probative value." The Court also notes that treating Dr. Djagarian's May 2016 treatment note, which the ALJ expressly considered, included a notation that Betty was obese. *See* AR 1281 ("BMI 35.51"). It was Dr. Djagarian's March 2017 treatment note to which the ALJ cited when pointing out Betty's "recently measured" BMI was 36.64. AR 1255. Betty does not specify how her obesity further impaired her ability to work beyond arguing that the ALJ "failed to analyze that [her] sitting difficulty *could be* exacerbated by her obesity." Plf's MSJ (Doc. 12 at pg. 17) (emphasis added). As in *Prochaska*, "because the record relied upon by the ALJ sufficiently analyzes [Betty's] obesity, any error on the ALJ's part was harmless." 454 F.3d at 737. Betty's argument in reply – that the ALJ did not adopt ME Dr. Puestow's opinion – is unconvincing. That the ALJ did not adopt Dr. Puestow's opinion verbatim is of no moment; the final determination of RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner"). Remand is not warranted in this case.

Doc. 16, at 20–22.

The Court agrees with the Magistrate Judge's finding that the ALJ properly explained why he assigned some probative value to PA Fogle's opinion as to occasional use but nevertheless concluded Plaintiff could frequently perform those functions. *See* Doc. 16, at 21 ("Whereas the ALJ afforded "some probative value" to Fogle's opinion in light of such record evidence, she afforded "*significant* probative value" to Dr. Puestow's opinion which provided that Betty could use her right and left hands continuously for handling, fingering, and feeling. The *greater* probative value given to Dr. Puestow's opinion is reflected in the ALJ's RFC finding limiting Betty to greater use (frequent) of her dominant upper extremity than the use to which Fogle opined."). As to Plaintiff's argument that the ALJ failed to properly assess Plaintiff's obesity, the Magistrate's reliance on *Prochaska* was appropriate. In *Prochaska*, the Seventh Circuit provided:

> According to SSR 02–1p, an ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment. But a failure to explicitly consider the effects of obesity may be harmless error. In *Skarbek v. Barnhart*, the ALJ did not address the claimant's obesity but did adopt "the limitations suggested by the specialists and reviewing doctors" who were aware of the condition. That, combined with the claimant's failure to "specify how his obesity further impaired his ability to work," made the error harmless: "although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Id.* The ALJ's implicit consideration of Prochaska's obesity through his review and discussion of her doctors' reports makes this case analogous to *Skarbek*. Although the ALJ did not explicitly address Prochaska's obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight: Drs. Zeman ("Ms. Prochaska is an overweight female in no distress"), Cederberg (she was overweight but "in no acute distress"), and Cragg (the treating physician, who described her as "[c]hronically obese") in particular. A number of other medical reports relied upon by the ALJ also noted her height and weight. No medical opinion in the record identified Prochaska's obesity as significantly aggravating her back injury or contributing to her physical limitations. She also fails to point to any other evidence suggesting that her obesity exacerbated her physical impairments. Because Prochaska failed to "specify how [her] obesity further impaired [her] ability to work," and because the record relied upon by the ALJ sufficiently analyzes her obesity, any error on the ALJ's part was harmless.

*Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (emphasis added) (internal citations

omitted). Just as in *Prochaska*, the ALJ specifically predicated his decision upon ME Dr.

Puestow's opinion, which identified obesity as one of Plaintiff's impairments. AR 35–37. Also

like *Prochaska*, Plaintiff fails to point to any other evidence suggesting that her obesity

exacerbated her physical impairments or ability to work. On this record, the Court finds

Plaintiff's assertions of error unconvincing. For these reasons, the Court adopts the Report and

Recommendation of the Magistrate Judge, grants Defendant's Motion for Summary Judgment,

and denies Plaintiff's Motion for Summary Judgment.

## CONCLUSION

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's Report and

Recommendations (Doc. 16); Plaintiff's Motion (Doc. 11) is DENIED, and Defendant's Motion

(Doc. 13) is GRANTED. The Clerk of Court be directed to enter judgment as follows: IT IS

ORDERED AND ADJUDGED that the decision of the Defendant, Andrew M. Saul,

Commissioner of Social Security, denying benefits to the Plaintiff, Betty M., is AFFIRMED.


The Clerk is directed to close the case.


Signed on this 15th day of April, 2020.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge

16